# IN THE COURT OF APPEALS OF IOWA

No. 14-1723
Filed February 11, 2015

IN THE INTEREST OF K.F. and B.F.,
Minor Children,

C.F., Father,
      Appellant,

H.F., Mother,
      Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District

Associate Judge.


A mother appeals from the order terminating her parental rights.

**AFFIRMED.**


Jeremy Feitelson of Feitelson Law, L.L.C., West Des Moines, for appellant

mother.

Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant

Attorney General, John P. Sarcone, County Attorney, and Stephanie Brown,

Assistant County Attorney, for appellee State.

Marshall Orsini of Carr & Wright, P.L.C., Des Moines, for the father.

Paul White, Juvenile Public Defender, Des Moines, for minor children.


Considered by Tabor, P.J., Mullins, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MAHAN, S.J.**

A mother appeals from the order terminating her parental rights. On our de novo review, we find there is clear and convincing evidence in the record to support the termination of the mother's parental rights. Also, termination of her parental rights is in the best interests of the children. We affirm the decision of the juvenile court.

### I. Background Facts & Proceedings.

Holly and Clayton are the parents of B.F., who was born in 2013. When B.F. was four months old he suffered serious injuries, including at least seven broken ribs, a fracture of the femur in both legs, a broken and dislocated hip, and a fracture to the right wrist. These injuries were not adequately explained by the parents, and he was removed from their care. The Iowa Department of Human Services issued a founded report of child abuse. Holly and Clayton were each charged with four counts of child endangerment resulting in serious injury and one count of neglect of a dependent person.

B.F. was adjudicated to be a child in need of assistance (CINA) pursuant to Iowa Code sections 232.2(6)(b) (2013) (parent has physically abused child), (c)(2) (child is likely to suffer harm due to parent's failure to exercise adequate supervision), and (n) (parent's mental condition results in child not receiving adequate care). He was placed in the care of the maternal grandfather. In October 2013, Clayton was charged with domestic abuse assault after an incident involving Holly, and a no-contact order was filed.

When K.F. was born in 2014, he was removed from the parents' care and placed with a maternal great-aunt. A CINA adjudication for K.F. was filed based

on sections 232.2(6)(b), (c)(2), and (n). In June 2014, Holly pled guilty to one charge of child endangerment causing bodily injury and was placed on probation; the other charges against her were dismissed.

On July 10, 2014, the State filed a petition seeking the termination of the parents' rights to B.F. and K.F. Holly testified at the termination hearing on September 29, 2014, that Clayton was responsible to the injuries to B.F.[1] She stated Clayton had problems with anger when he was drinking alcohol and he had been abusive to her. Holly stated she was in the process of divorcing Clayton and was not having contact with him. She agreed the children could not be returned to her care at that time but stated she felt they could be placed in her care in a few months. Holly stated she was living with her grandmother, Norma.

The hearing continued on September 30, 2014. The children's great-uncle, Terry, testified he saw Clayton at Norma's home on September 21, 2014, although Holly and Norma were not in the home right then. Clayton told Terry he was helping Holly and Norma install some flooring. Evidence was also presented that Holly had recently asked to dismiss the no-contact order arising from Clayton's domestic abuse charges. Holly was recalled to the stand, but she refused to testify and left the courtroom.

The juvenile court terminated the parental rights of Holly and Clayton under sections 232.116(1)(d) (child CINA for physical abuse, circumstances continue despite the receipt of services), (h) (child three or younger, CINA, removed for at least six months, and cannot be returned home) (B.F. only), and

---

[1] Holly testified she now also believed Clayton had injured her oldest child. Clayton is not the father of this child. Holly consented to the termination of her parental rights to the oldest child, and he lives with his father.

(i) (child meets definition of CINA, was in imminent danger, and services would not correct conditions). The court found termination of the parents' rights was in the best interests of the children, noting Holly was unlikely to protect the children from Clayton if they were returned to her care. Holly appeals the termination of her parental rights.[2]

## II. Standard of Review.

The scope of review in termination cases is de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing evidence is needed to establish the grounds for termination. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Where there is clear and convincing evidence, there is no serious or substantial doubt about the correctness of the conclusion drawn from the evidence. *In re D.D.,* 653 N.W.2d 359, 361 (Iowa 2002). The paramount concern in termination proceedings is the best interests of the child. *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990).

## III. Sufficiency of the Evidence.

Holly claims there is not sufficient evidence in the record to support termination of her parental rights under section 232.116(1)(d), (h), or (i). She states she was in the process of divorcing Clayton and was distancing herself from him. Holly was attending therapy to address issues of domestic abuse. She lived with her grandmother, Norma, and was employed.

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find

---

[2] Clayton also appealed the termination of his parental rights, but his appeal was dismissed as untimely by the Iowa Supreme Court.

supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). On our de novo review, we find there is clear and convincing evidence in the record to support the termination of Holly's parental rights under section 232.116(1)(d). This section provides:

> The court finds that both of the following have occurred:
> (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
> (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Iowa Code § 232.116(1)(d).

B.F. was adjudicated a CINA under section 232.2(6)(b) because he had been physically abused by a parent.[3] K.F. was adjudicated on the same ground because he was imminently likely to be abused by a parent if he had remained in the parents' care. Also, K.F. was a member of the same family as B.F., who had been adjudicated a CINA because he had been physically abused as a result of the acts of one or both of his parents.

Subsequent to the CINA adjudications, Holly was offered services to help her address the issues of domestic abuse in her family. Despite these services, the evidence showed Holly continued to have a relationship with Clayton. Holly testified Clayton had problems with alcohol and anger management. Although

---

[3] Section 232.2(6)(b) applies to a child, "Whose parent, guardian, or other custodian, or other member of the household to which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child."

she testified she believed he had injured B.F. and an older child, she continued to maintain contact with him. As the juvenile court found, if the children were placed in Holly's care it is unlikely she would protect them from further injury by Clayton. We conclude the juvenile court properly terminated Holly's parental rights under section 232.116(1)(d).

### IV. Best Interests.

Holly asserts that she has a strong bond with the children. She asks to have the proceedings extended for at least six months to allow her to have additional time to reunite with the children.

When considering the best interests of children under section 232.116(2), we consider the children's safety; the best placement for furthering the long-term nurturing and growth of the children; and the physical, mental, and emotional condition and needs of the children. *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Children should not be required to wait for their parents to become responsible adults. *See In re K.R.*, 737 N.W.2d 321, 324 (Iowa Ct. App. 2007).

We conclude termination of Holly's parental rights is in the best interests of the children. Holly has consistently placed her relationship with Clayton above her interest in protecting the children. Although the case had been pending for fourteen months by the time of the termination hearing, she had not progressed to a point where she could safely care for the children. It would not be in their best interests to give Holly additional time to participate in services.

We affirm the decision of the juvenile court terminating Holly's parental rights to B.F. and K.F.

**AFFIRMED.**