# IN THE COURT OF APPEALS OF IOWA

No. 17-0286
Filed May 3, 2017

**IN THE INTEREST OF B.P., C.C., and D.C.,**
**Minor Children,**

**J.C., Mother,**
    Appellant,

**C.P., Father of B.P. and D.C.,**
    Appellant.
_____

Appeal from the Iowa District Court for Linn County, Susan F. Flaherty, Associate Juvenile Judge.

A mother and father separately appeal the termination of their parental rights to their children. **AFFIRMED ON BOTH APPEALS.**

John J. Bishop, Cedar Rapids, for appellant mother.

David R. Fiester of Law Office of David R. Fiester, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, and Kristi A. Traynor, Assistant Attorney General, for appellee State.

Jeannine L. Roberts, Cedar Rapids, guardian ad litem for minor children.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, Presiding Judge.**

A mother and father separately appeal the termination of their parental rights to their children.

## I.       Background Facts and Proceedings

B.P., born April 2003; D.C., born September 2008; and C.C., born September 2004,[1] came to the attention of the Iowa Department of Human Services (DHS) in this matter in June 2015, upon allegations of drug use by the parents and domestic violence occurring in the home.[2]  Specifically, the DHS was concerned both parents were using methamphetamine and the father was committing acts of domestic violence against the mother in the presence of the children.  On July 2, the DHS removed the children from the home.  On July 8, the juvenile court approved the removal and directed the mother and the father to cooperate with services offered by the DHS.  Upon stipulation by the parties, the children were adjudicated children in need of assistance under Iowa Code section 232.6(6)(c)(2) and (6)(n) (2015).

In July, both parents tested positive for methamphetamine; the father admitted use, as did the mother despite initially denying it.  The mother also admitted to using methamphetamine twice a week in the months leading up to removal and being unsure of how the use affected her ability to care for the children.  The mother did acknowledge that she knew the father was using but

---

[1] The mother is the biological mother of all three children.  The father is the biological father of B.P. and D.C., referred to in some places in the record as "D.P."  The petition to terminate the parental rights of the father of C.C. was dismissed.

[2] In 2009, the children were adjudicated children in need of assistance (CINA) and removed from the mother's and father's care due to concerns about drug use and domestic violence.  The children were returned to the mother's care.  But the CINA case was left open until 2014, when the mother agreed to continue with services and to end her relationship with the father.

claimed he was not using in the presence of the children. Following removal, multiple incidents of domestic violence between the father and the mother were reported to the DHS by third-party witnesses. In August, the mother again ended her relationship with the father and reported the father had thrown a safe in the home, taken her phone away, and screamed and yelled at her.

The mother agreed to participate in substance-abuse and mental-health treatment, but she did not participate in domestic-violence treatment. In November, the mother moved from fully-supervised to semi-supervised visits but returned to fully-supervised visits in early December after she tested positive for methamphetamine. The mother denied using. By March 2016, the mother again showed progress and returned to semi-supervised visits until May when she was given unsupervised visits. Overnight visits were started in November and extended overnights in December.[3] However, in late December, the mother again tested positive for methamphetamine, and semi-supervised visits were re-instituted. The mother again denied using and blamed the result on a sexual encounter with a methamphetamine user.

Throughout this matter, the mother has been less willing to engage in services than in her prior interactions with the DHS. She has been less forthcoming about the details of her life and less willing to communicate with the DHS. A permanency specialist assigned to the case said that she had seen less of a drive from the mother to do the things necessary to secure reunification with the children compared to the prior DHS case. When children are in the mother's

---

[3] At that point, the mother's progress led to a continuance in the termination action.

care and together, they exhibit behavior changes and become aggressive towards one another.

The father continued to struggle with methamphetamine use and acknowledged using on several occasions. He spent time in jail for possession of methamphetamine, and his housing and employment situation has been unstable throughout the matter. His visits with B.P. and D.C. were sporadic due to his situation, and he was unable to care for the children due to his own struggles. At the time of the termination hearing, he was incarcerated with a five-year sentence imposed.

On October 11, 2016, after more than one year of offered services in this matter, the State filed a petition to terminate the mother's and the father's parental rights. The matter came on for hearing on January 27, 2017. On February 7, the juvenile court ordered both the father's and the mother's parental rights terminated under Iowa Code section 232.116(1)(f) (2016). Both the mother and the father appeal.

On appeal, the mother claims the State failed to prove by clear and convincing evidence the children could not be returned to her care and termination is not in the best interest of the children. The father also claims termination was not in the children's best interest and a parental bond exists that should preclude termination.[4]

---

[4] The father does not dispute the children could not be returned to his care at the time of termination, but he claims they could be returned to the mother's. We decline to address that claim because the father lacks standing. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (holding one parent does not have standing to assert arguments pertaining to the other parent).

## II.      Standard of Review

Our review of termination of parental rights proceedings is de novo.  *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).  In reviewing the juvenile court's ruling, we give weigh to its factual findings but are not necessarily bound by them.  *Id.*

## III.     Statutory Grounds for Termination

Iowa Code section 232.116(1)(f) permits termination if:

> f. The court finds that all of the following have occurred:
>        (1) The child is four years of age or older.
>        (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>        (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
>        (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The only ground disputed by the mother is subparagraph (4).

Based on the record, we agree with the State that significant barriers exist that prevent the children from being returned to the mother.  Prior to removal, and after a prior years-long child-in-need-of-assistance proceeding, the children were returned to the care of the mother.  Almost immediately, she became re-involved in an abusive relationship with the father and returned to old habits of twice-weekly methamphetamine use, without significant concern for how the domestic abuse and drug use affected her ability to care for the children.  Since removal, the mother has had intermittent periods of progress, leading to extended overnight visitation with the children.  But less than a month after receiving extended overnight visitation, she again tested positive for methamphetamine, denied use, and blamed the test result on having a sexual

relationship with a paramour she suspected of methamphetamine use. The court did not find her explanation credible. At the termination hearing, the social worker assigned to the case stated:

> There's still not any acknowledgment that she used, even after we have a positive drug test. . . . I don't know where the use took place. Was it in her home? Was it somewhere else? Her ability to discern between what's appropriate and what's not appropriate in regards to relationships, I think that's still questionable as well after hearing about [the paramour].

In explaining why the case worker favored termination of the mother's parental rights, she testified: "Just due to the length that they've been out of care and their need for permanency I think. I think it's time that we address that and give the boys that permanency that they need."

In its written order following the termination hearing, juvenile court concluded the mother:

> continues to lack the insight and judgment necessary to safely parent her children. There is no reason to believe that [the mother's] insight or decision making will change in the reasonably near future. There is clear and convincing evidence to support the conclusion that to continue to make efforts to return these children to their mother is detrimental to their health, safety, and welfare and not likely to result in permanency and stability for the children.

Based on our review of the record, we agree with the district court the State proved by clear and convincing evidence the children could not be safely returned to the mother under Iowa Code section 232.116(1)(f)(4).

## IV.    Best Interest

In accordance with Iowa Code section 232.116(2), the juvenile court considered "whether proceeding with termination is in the best interest of the child[ren]." The court stated:

>[The father] and [the mother] have been provided with ample time and supportive services to assist them in making the needed changes to provide a safe, stable, home for these children, and neither has been able to do so. Any additional time comes at the expense of the children's need for permanency.
>
>[B.P., D.C.,] and [C.C.] are adoptable. They each have some behavioral and emotional issues which will improve with permanent placement and a safe home environment. They are in placements currently which can become permanent placements. The children's safety, health, and welfare can best be ensured by continued placement according to current dispositional orders until permanent placement is made.

We agree it was in the best interest of the children to terminate both the mother's and the father's parental rights and nothing militated against termination including any asserted bond between the children and either parent. *See* Iowa Code § 232.116(3).

## V. Conclusion

We agree the State proved by clear and convincing evidence the mother's parental rights to B.P., D.C., and C.C. should be terminated under section 232.116(1)(f). We also agree with the district court that termination of both the father's and the mother's parental rights is in the children's best interest.

**AFFIRMED ON BOTH APPEALS.**