**IN THE COURT OF APPEALS OF IOWA**

No. 17-0407
Filed June 7, 2017

**IN THE INTEREST OF A.C. and A.C.,**
**Minor Children,**

**M.C., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

A mother appeals the termination of her parental rights to her children. **AFFIRMED.**

Kimberly A. Voss-Orr of Law Office of Kimberly A. Voss-Orr, Ames, for appellant mother.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Special Assistant Attorney General, for appellee State.

Lucas J. Richardson of Terrill, Richardson, Hostetter & Madson Law Offices, Ames, guardian ad litem for minor children.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

A mother appeals the termination of her parental rights to her children. On our de novo review, we give weight to the juvenile court's fact findings, although they are not binding on us. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).

The evidence shows the mother and her husband were involved in "one of the most egregious cases" of sexual abuse that her probation officer had seen. At best, the mother failed to protect her own children and two other children from the abuse. At worst, as the juvenile court found, she was "present [during the abuse] and also encouraged it."[1] As a result of the abuse, the mother entered an *Alford*[2] plea to two class "C" felony charges of lascivious acts with a child and two counts of the aggravated misdemeanor of child endangerment. She is a registered sex offender, on lifetime parole, and prohibited from having contact with minor children other than her own.

The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) (2016). The mother does not dispute that the State proved the grounds for termination under this section. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (noting that the court need not analyze whether the grounds for termination exist under section 232.116(1) where the parent does not dispute the existence of the grounds for termination). Instead, she argues the exceptions to termination set forth in Iowa Code section 232.116(3)(c) (stating

---

[1] The juvenile court made this finding after taking judicial notice of the file in the criminal case against the mother. The criminal file was not included in the record transmitted to this court.

[2] An Alford plea allows a defendant to maintain innocence while acknowledging that the State has enough evidence to win a conviction. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

the court need not terminate parental rights if clear and convincing evidence shows termination would be detrimental to the child due to the closeness of the parent-child relationship) and (e) (providing the court need not terminate if the parent is absent due to commitment to any institution) should be applied. These provisions are permissive, not mandatory. *See In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993), *overruled on other grounds by P.L.*, 778 N.W.2d at 39–40. The decision to apply one of the statutory exceptions to termination is discretionary and depends on the child's best interests under the circumstances of that particular case. *See id.*

We decline to apply the exceptions to the termination statute set forth in section 232.116(3)(c). Although the mother has a bond with the children, the evidence shows the children's bond to their pre-adoptive foster parents, whom they refer to as "mommy and daddy," is stronger. The older child has been in the foster parents' care since before one year of age and the younger child has been in their care since birth. The risk of harm the children would face if the mother's parental rights remain intact substantially outweighs any harm that would befall the children by breaking the parent-child bond. For the same reason, we decline to apply the exception to termination found in section 232.116(3)(e).

The mother requests an additional six months to prove she can safely care for the children. This extension of time is not in the children's best interests considering the risk the mother presents to the children's safety and their need for permanency. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home"); *In re D.J.R.*, 454 N.W.2d

838, 845 (Iowa 1990) ("We have long recognized that the best interests of a child are often not served by requiring the child to stay in 'parentless limbo.'" (citation omitted)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41; *see also In re A.C.*, 415 N.W.2d 609, 613-14 (Iowa 1987) (noting it is important to fix child custody quickly to avoid parentless limbo and holding that once the statutory time limits for termination have been met, it is unnecessary to take any more from the children's future).

The mother also challenges the termination order on the grounds her due process rights were violated. First, she argues her exercise of her Fifth Amendment right in the criminal case pending against her infringed on her due process rights in the child-in-need-of-assistance (CINA) and termination-of-parental-rights (TPR) cases. However, the mother never raised this issue before the juvenile court, and therefore, any error is not preserved for our review.[3] *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003). The mother also claims the intervenor's "lack of effective counsel and the court's refusal to grant a continuance amounted to a denial of due process," but she cannot stand in place of the intervenor and argue her rights. *See In re K.R.*, 737 N.W.2d 321, 323

---

[3] Even if we were to ignore the error-preservation issue, the mother has failed to cite any legal authority for her claim or clarify her argument beyond the conclusory statement that her exercise of her Fifth Amendment right "amounted to a restriction on her due process rights in her CINA and TPR cases." Her failure to make a specific argument on appeal waives error. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review.").

(Iowa Ct. App. 2007) (holding one party did not have standing to raise arguments on another party's behalf in an effort to obtain a reversal of the termination order).

Finally, the mother claims the juvenile court should have excluded one of the State's witnesses because the State failed to list him on its witness list before trial. We review this claim for an abuse of discretion. *See In re E.H. III*, 578 N.W.2d 243, 245 (Iowa 1998). In allowing the witness to testify, the juvenile court noted the mother originally had the witness listed as one of her witnesses before her attorney decided not to call the witness at trial, and therefore, the juvenile court found there was no undue surprise. *See In re A.S.*, 743 N.W.2d 865, 869 (Iowa 2007) (noting that even the erroneous admission of evidence will not result in reversal unless it is prejudicial); *Duncan v. City of Cedar Rapids*, 560 N.W.2d 320, 323 (Iowa 1997) (stating that purpose of discovery rule requiring parties to disclose identity of any person expected to be called as a witness at trial is to avoid surprise). The mother knew of the witness and the relevant information he had to offer. She also received notice that the State had subpoenaed the witness. Because the State's failure to list the witness in its pretrial disclosure did not prejudice the mother, the district court did not abuse its discretion in allowing the witness's testimony.

**AFFIRMED.**